IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
MAR 5 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

ENTERED
'3 5 2002

| | |
|---|---|
| BILLY RENEE BAILEY, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: CV-01-PT-3047-E |
| CLAY COUNTY, ALABAMA, Sheriff RALPH TOLAND, in his official capacity, and individually, and FRANK THREAT, in his official capacity as jailor of Clay County, Alabama, and individually, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This cause comes to be heard on defendants Clay County, Alabama and Sheriff Ralph Toland's Motion(s) to Dismiss filed on January 2, 2001.

### FACTS[1]

On November 30, 1999, plaintiff Billie Renee Bailey ("Bailey") was arrested and incarcerated in the Clay County, Alabama jail on charges of Menacing and Reckless Endangerment. She was incarcerated for seven weeks while awaiting her trial.

On the night of December 5, 1999, Bailey was given beverages, on two occasions, in open containers from the jail's kitchen.[2] The only jailor on duty that evening was defendant Frank Threat ("Threat").[3] Shortly after consuming these beverages, Bailey began to feel groggy and went to sleep.

---

[1] For purposes of this motion, the facts alleged by the plaintiff are deemed to be true.

[2] According to Bailey, she had always received her beverages in sealed containers or the beverage was poured from a common container in her presence.

[3] Bailey notes that the practice of the Clay County Jail was to always post two guards or jailors on duty.

The next morning Bailey awoke and reported to jailors Leroy Brown and Josh Gregg that she believed she had been raped while she slept the previous night. These jailors reported this information to Deputy Jean Alexander ("Alexander"). Alexander interviewed Bailey and transported her to the Clay County Hospital where Dr. Andrews performed an examination and did a rape test kit. The kit tested positive for male semen. Pictures taken at the scene revealed bruising on Bailey's shoulder, thigh and breasts as well as teeth marks on her breasts. An investigation established that the alleged rape occurred between midnight of December 5 and 6:00 AM of December 6, 1999.[4]

Bailey suffered severe physical and emotional damage due to the rape. According to Bailey, she has suffered from the following:

> sleep deprivation, nightmares, depression, panic disorders, fear of men particularly in crowded areas, paranoia, inability to work and earn a living which has required her to file for disability benefits, required therapy to regain ability to accomplish simple life tasks, required medication for depression and panic attacks, and she has been required to take medication, antibiotics, frequently for health problems acquired during her incarceration in Clay County Jail.

Bailey also alleges that the defendants created an atmosphere in the Clay County Jail that "was horrendous" and fostered her rape. She claims that Toland negligently supervised his jailors and allowed them to terrorize the inmates. She also alleges that Clay County allowed the jail to become "run down and in a state of disrepair."

On November 29, 2001, Bailey filed a civil action in this court against Clay County, Toland, in his official and individual capacity, and Threat, in his official and individual capacity. In Count I, Bailey alleges that she was deprived of her due process rights secured under the

---

[4] It was later determined that Threat was the individual that had sexual intercourse with Bailey. Threat initially denied this sexual contact. Later, he changed his testimony and alleged that the sex was consensual.

2

Fourteenth Amendment in that the treatment she received was arbitrary, unreasonable and capricious. In Count II, she alleges that the defendants imposed cruel and unusual punishment in violation of the Eighth Amendment. In Count III, she alleges that Threat committed an assault and battery and that Clay County and Toland failed to take necessary steps to prevent said assault and battery. In Count IV, Bailey alleges that Clay County and Toland are responsible for the acts of Threat under the doctrine of respondeat superior. In Count V, she claims that Clay County and Toland negligently supervised Threat. Bailey requests compensatory and punitive damages against the defendants, jointly and severally, in the amount of $1,000,000.00. She also requests that she be awarded costs and attorney fees.

## ARGUMENTS

Defendant Clay County has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). It argues that the claims under 42 U.S.C. § 1983 in Counts I and II are due to be dismissed for two reasons. First, it states that it cannot be held liable under § 1983 on a respondeat superior theory. *See Monell v. Dep't of Social Serv.*, 436 U.S. 658, 691 (1978). Second, it claims that an Alabama county cannot be held vicariously liable under § 1983 for injuries to a county jail inmate arising from the sheriff's management of the jail. *See Turquitt v. Jefferson County*, 137 F.3d 1285, 1286 (11th Cir. 1998) (en banc).

Addressing Bailey's state law claims in Counts III, IV, and V, it argues that the claims are due to be dismissed because it cannot be held vicariously liable under the theory of respondeat superior for the actions of the Sheriff Toland or any of his deputies or jailors. *See Parker v. Amerson*, 519 So. 2d 442 (Ala. 1997). Additionally, it asserts that the Sheriff Toland is an executive officer of the State of Alabama. *See* Ala. Const. art. V, § 112. It notes that the Eleventh Circuit found in *Turquitt* that the Alabama Code does not authorize counties to

3

supervise inmates; instead, it authorizes control over inmates to Alabama sheriffs. *See Turquitt*, 137 F.3d at 1289. Finally, it states that Bailey's claims for punitive damages are due to be dismissed because it is immune from punitive damages under 42 U.S.C. § 1983 and state law. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); Ala. Code § 6-11-26 (1975).

Defendant Toland has also filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Toland argues that all claims against him in his official capacity pursuant to 42 U.S.C. § 1983 are due to be dismissed for two reasons. First, all claims against him as Sheriff of Clay County are due to be dismissed for lack of subject matter jurisdiction pursuant to the Eleventh Amendment. Second, any "official capacity" claims are due to be dismissed for failure to state a claim because he is not a "person" for purposes of 42 U.S.C. § 1983.

Toland also argues that claims under 42 U.S.C. § 1983 in Count I and II against him in his "individual capacity" are due to be dismissed for four reasons. First, he states that the complaint fails to allege a violation by him of Bailey's constitutional rights under the Eighth or Fourteenth Amendments. Second, he claims that the complaint alleges no facts sufficient to state a claim that he enacted some sort of policy or allowed some custom to violate Bailey's constitutional rights. Third, he asserts that the claims fail to meet the heightened pleading standard required for § 1983 claims. Finally, he claims that he is entitled to qualified immunity from suit because Bailey failed to allege that he violated her constitutional rights.

Furthermore, Toland asserts that Bailey's state law claims in Counts III, IV, and V are due to be dismissed. He argues that the claims are barred because he is entitled to absolute sovereign immunity from suit. Additionally, he argues that the claims are due to be dismissed

4

for lack of subject matter jurisdiction as the suit against him, in his individual and official capacity, would be a suit against the State of Alabama and as such, is barred pursuant to the Eleventh Amendment.[5]

In response to Clay County's motion to dismiss the federal claims, Bailey concedes that local governments are not subject to punitive damages under 42 U.S.C. § 1983. However, she claims that the county is responsible for "funding the operation of the jail and . . . providing facilities to house the jail." *Stark v. Madison County*, 678 So. 2d 787 (1996). Relying on *Marsh v. Butler County*, 268 F.3d 1014, 1067 (11th Cir. 2001) (en banc), she asserts that a county can be liable for physical conditions of a jail, the maintenance of which was the county's responsibility, when there was objective substantive risk of serious harm to inmates. Thus, she contends that the federal claims should not be dismissed because she has alleged that the jail was understaffed and the county had allowed the jail to become run down and in a state of disrepair.

Turning to Toland's motion to dismiss the federal claims, Bailey concedes that Eleventh Amendment prohibits the recovery of damages against the sheriff in his official capacity. However, she contends that the sheriff is a "person" under § 1983 when the issue at hand is prospective injunctive relief. She notes that she sought in her complaint "such other and further relief as to [sic] the Court deems just and proper." Although she is no longer incarcerated, Bailey states that no standing issue has been raised and that the evidence in this case is expected to demonstrate significant need to correct jail conditions. As for the issue of qualified immunity and heightened pleading, she contends that Toland has been advised of the misconduct charged and that he points to no specific pleading deficiency. She states that Toland has been accused of

---

[5] Clay County and Toland both request an award of costs and attorney's fees pursuant to law and 42 U.S.C. § 1988.

5

creating an atmosphere that provided "the opportunity for the rape of Billie Renee Bailey by an inmate."[6] Furthermore, she contends that it is clearly established in the law that deliberate indifference to the safety and security of inmates in public institutions is prohibited. *See Marsh*, 268 F.3d at 1027. Bailey argues that the Eleventh Circuit has noted that Supreme Court precedent has established an affirmative duty to protect inmates simply from the limitation the State has imposed on their freedom to act on their own behalf. *See id.* at 1038. Additionally, she argues that it is clear that "[t]he failure to provide an inmate with an environment that does not impair his physical and mental health violates the Due Process Clause of the Fourteenth Amendment." *Adams v. Mathis*, 458 F. Supp. 302, 308 (M.D. Ala. 1978), *aff'd*, 614 F.2d 42 (5th Cir. 1980). Thus, Bailey concludes that Toland had a constitutional duty to supervise the operation of the facility maintained for the incarceration of people in Clay County, Alabama.

Finally, Bailey concedes that the state law claims against Clay County in Counts III, IV, and V are due to be dismissed. As for Toland, Bailey states that he is entitled to sovereign immunity as far as the state law damages claims are concerned. However, she contends that he is not immunized from liability to otherwise respond to the order of a court relating to the performance of his duties and his interpretation of the law. *Relying on* Ala. Const. art. V, § 112; *Alexander v. Hatfield*, 652 So. 2d 1142, 1143 (Ala. 1994).[7]

In reply, Clay County argues that Bailey's reliance on *Marsh* is misplaced and that the case is inapplicable. According to Clay County, allegations in *Marsh* indicated that inmates were fashioning weapons from dilapidated pieces of the jail and locks on the cells did not

---

[6] Bailey plans to attempt to state more details of her claims in an amendment to her complaint.

[7] In support of this argument, Bailey notes that she has requested attorney fees, costs, and "such other and further relief as to [sic] the Court deems just and proper."

function so that inmates were free to run the halls. Clay County distinguishes *Marsh* from this case because there has been no allegations that the physical conditions of the jail created a risk of sexual abuse. Additionally, it notes that the sheriff is not the policy-maker for the County such that liability can attach for the alleged actions of Toland and Threat. It concludes that it has no authority or responsibility for the supervision of the jail or Sheriff Toland's staff. *Relying on Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990).

Sheriff Toland replies that in his official capacity, he is not a "person" under 42 U.S.C. § 1983, and consequently, Bailey's claims fail to state a claim upon which relief can be granted, regardless of the relief sought.[8] *See Will*, 491 U.S. at 71. As for the claims against him in his individual capacity, he contends that Bailey has failed to meet the heightened pleading requirements for § 1983 claims. He claims that Bailey has failed to state specifically any actions or inaction on his part that affected her or how the alleged pre-meditated drugging and rape by a jailer resulted from and action or inaction on his part. He argues that vague statements about the "atmosphere" of the jail are not sufficient to survive the motion to dismiss. *Relying on Fulman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

Addressing the qualified immunity issue, Toland contends that Bailey has not put forth a bright line to demonstrate that his conduct violated clearly established law. Toland notes that *Marsh* cannot create this bright line because it was decided two years after the subject incident took place. Additionally, he states that "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Kelly v. Curtis*, 21 F.3d 1544, 1550 (11th Cir. 1994).

---

[8] Although not addressed by Bailey, Toland argues that Bailey's request for punitive damages pursuant to the federal law claims is due to be dismissed.

Finally, Toland replies that he is entitled to sovereign immunity from all of Bailey's state law claims. He contends that Bailey has not made a claim for injunctive relief. Even if her complaint could be construed to request such relief, Toland asserts that Bailey does not have standing to raise this claim because she is no longer incarcerated in the jail. *See Lewis v. Casey*, 518 U.S. 343, 344 (1996). Furthermore, Toland notes that the Eleventh Amendment bars state law claims brought in federal court under pendent jurisdiction. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984).

## ANALYSIS

Rule 12(b)(6) tests the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true. *United States v. Gaubert*, 499 U.S. 315, 327 (1991). All factual allegations are to be construed in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989). Usually, a complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that will entitle him to relief. *In re Johannessen*, 76 F.3d 347, 349 (11th Cir. 1996).

## CONCLUSIONS OF THE COURT

The court concludes that all the claims against Clay County are due to be dismissed based upon *Turquitt* and *Parker*. It is a total stretch to suggest that the jail facilities contributed to Threat's alleged conduct. The court further concludes that all claims against Toland in his official capacity are due to be dismissed. The plaintiff does not have standing to seek injunctive relief. The claims against Toland in his individual capacity in Counts I and II will be dismissed with leave for plaintiff to amend, within ten days, if she can in good faith do so, to specifically allege what past conduct of Toland created a reasonable suggestion that he either participated in

8

the alleged misconduct or resulted in Threat thinking that his raping of an inmate would be tolerated by Toland, or that the sheriff's custom or policy would allow such conduct.[9] Counts III, IV, and V against Toland will also be dismissed.

This ___5___ day of March 2002.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[9] Merely alleging that Sheriff Toland created an "atmosphere" that was horrendous and that he was apathetic and negligent in his supervision of the jailors is not sufficient pleading to allege a custom and policy that violated Bailey's constitutional rights in the fashion that she alleged occurred. This is especially true considering the fact that jailors Leroy Brown and Josh Gregg reported the rape to Deputy Jean Alexander after they were informed of the allegations by Bailey. Further, Deputy Alexander transported Bailey to the Clay County Hospital for a medical examination and rape kit test.

9