FILED
03 MAY -9 PM 2:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

BILLY RENEE BAILEY,         )
                            )
    Plaintiff,              )
                            )
v.                          )   Civil Action No.: 01-PT-3047-E
                            )
FRANK THREAT, et al.,       )
                            )
    Defendants.             )

ENTERED
MAY 9 2003

## MEMORANDUM OPINION

This cause comes on to be heard upon plaintiff Billy Renee Bailey's ("Bailey") Motion to Amend Complaint, filed on March 10, 2003.

### FACTS AND PROCEDURAL HISTORY[1]

On November 30, 1999, Bailey was arrested and incarcerated in the Clay County, Alabama jail on charges of Menacing and Reckless Endangerment. She was incarcerated for seven weeks while awaiting her trial.

On the night of December 5, 1999, Bailey was given beverages, on two occasions, in open containers from the jail's kitchen.[2] The only jailor on duty that evening was defendant Frank Threat ("Threat"). Shortly after consuming these beverages, Bailey began to feel groggy and went to sleep.

The next morning Bailey awoke and reported to jailors Leroy Brown and Josh Gregg that she believed she had been raped while she slept the previous night. These jailors reported this

---

[1] For purposes of this motion, the facts as alleged in the complaint will be taken as true.

[2] According to Bailey, she had always received her beverages in sealed containers or the beverage was poured from a common container in her presence.



information to Deputy Jean Alexander ("Alexander"). Alexander interviewed Bailey and transported her to the Clay County Hospital where Dr. Andrews performed an examination and did a rape test kit. The kit tested positive for male semen. Pictures taken at the scene revealed bruising on Bailey's shoulder, thigh and breasts as well as teeth marks on her breasts. An investigation established that the alleged rape occurred between midnight of December 5 and 6:00 AM of December 6, 1999.[3]

Bailey suffered severe physical and emotional damage due to the rape. According to Bailey, she has suffered from the following:

> sleep deprivation, nightmares, depression, panic disorders, fear of men particularly in crowded areas, paranoia, inability to work and earn a living which has required her to file for disability benefits, required therapy to regain ability to accomplish simple life tasks, required medication for depression and panic attacks, and she has been required to take medication, antibiotics, frequently for health problems acquired during her incarceration in Clay County Jail.

Bailey also alleges that the defendants created an atmosphere in the Clay County Jail that "was horrendous" and fostered her rape. She claims that Clay County Sheriff Ralph Toland ("Toland") negligently supervised his jailors and allowed them to terrorize the inmates. She also alleges that Clay County allowed the jail to become "run down and in a state of disrepair."

On November 29, 2001, Bailey filed a civil action in this court against Clay County, Toland, in his official and individual capacity, and Threat, in his official and individual capacity. On March 5, 2002, this court dismissed all claims against Clay County, stating that "[i]t is a total stretch to suggest that the jail facilities contributed to Threat's alleged conduct." *See* Mem. Op. of March 5, 2002 at 8 (Doc. 24). After Bailey filed an amended complaint, this court again

---

[3] It was later determined that Threat was the individual that had sexual intercourse with Bailey. Threat initially denied this sexual contact. Later, he changed his testimony and alleged that the sex was consensual.

dismissed all claims against Clay County that related to the alleged rape. Specifically, this court stated that to "the extent that the plaintiff is claiming that bad physical conditions at the jail caused the jailor to rape the plaintiff . . . [a]ny such claim against Clay County is due to be dismissed because of controlling Eleventh Circuit and U.S. Supreme Court precedent . . . ." *See* Mem. Op. of June 24, 2002 at 1-2 (Doc. 39). Bailey has filed the present motion seeking yet again to add claims against Clay County concerning the alleged rape.

## ARGUMENTS

### I. Plaintiff's Position

Bailey cites Federal Rules of Civil Procedure 15(a) and 54(b), the latter of which states, in part, that

> . . . any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Bailey contends that, through discovery, she has learned of additional facts that make an amendment to her complaint appropriate. Specifically, she points to the deposition testimony of Toland, that on the night of the rape, only one jailer was scheduled to be on duty and that it was routine for only one jailer to be scheduled, due to inadequate funding from the Clay County Commission. *See* Toland Depo. at 40. According to Bailey, the Clay County Commission was aware of the inadequate funding and/or staffing, as Toland had routinely requested more funds so that more jailers could be hired. *Id.* at 38. Toland informed the Clay County Commission that without more jailers, a serious risk of harm existed for the present jail staff and female inmates. *Id.* at 35, 39. Toland also stated that if more than one jailer had been on duty, the rape would not

3

have occurred. *Id.* at 76. *See also* Pl. Supp. Reply Br. at 6-8.

Bailey cites *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997), in which the court stated that if *"deliberate* action attributable to the municipality directly caused a deprivation of federal rights," the municipality could be held liable. *Id.* at 415 (emphasis in original). Here, Bailey contends, the County Commission's policy of refusing to provide adequate funds to staff the jail was deliberate and contributed to her rape and deprivation of constitutional rights. Bailey asserts that the continual denial of funds amounted to a routine, custom, or practice, and that the County Commission knew or should have known that its policy created a substantial risk of harm to female inmates.

Because this information is newly discovered, Bailey argues, she should be allowed to amend her complaint.

## II. Defendants' Response

First, Clay County argues, the motion is untimely. Clay County cites Federal Rule of Civil Procedure 59(e), which states that a motion to alter or amend a judgment must be filed within ten days of the judgment. While Rule 54(b) does give the district court discretion to revise non-final orders, Clay County contends, it does not indefinitely extend the time limit found in Rule 59(e). Moreover, Rule 15(a) does not address when a party may move to modify an order. Clay County cites Rule 60(b), which states, in part, that "[o]n motion . . . the court may relieve a party . . . from a final judgment, order, or proceeding [because of] . . . newly discovered evidence *which by due diligence could not have been discovered* in time to move for a new trial under Rule 59(b)." (emphasis added). Clay County contends that Bailey cannot make such a showing, because nothing prevented her from taking Toland's deposition earlier.

Clay County also notes that a motion to amend may be denied when the amendment would be futile. *See, e.g., Diesel "Repower," Inc. v. Islander Investments Ltd.*, 271 F.3d 1318, 1322 (11th Cir. 2001). Here, Clay County argues, the proposed amendment would not change the fact that it is simply not liable for the operation of the jail. Bailey is required to show that Clay County knew of a "strong likelihood, rather than a mere possibility" that Bailey would be raped. *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1540 (11th Cir. 1994)(en banc). Stated differently, "plaintiff must [] demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404 (emphasis in original). *See also Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1312 (11th Cir. 2001)("Because the record does not establish that the jury found that the City had a custom or policy of allowing rape or that the rape incident was part of the custom or pattern of sexual harassment, we cannot reasonably say that the jury found all essential aspects of the § 1983 case against the City."). Clay County argues that the failure to provide funding simply does not meet this level of culpability.

Clay County also cites *Sewell v. Town of Lake Hamilton*, 117 F.3d 488 (11th Cir. 1997), a case involving a claim that the municipality failed to supervise or train an officer. In that case, the court stated that

> It seems apparent to us that Sewell cannot establish deliberate indifference on the part of the Town. As the Second Circuit has held: It is not enough to show that a situation will arise and that taking the wrong course in that situation will result in injuries to citizens. . . . *City of Canton* also requires a likelihood that the failure to train or supervise will result in the officer making the wrong decision. Where the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not "so likely" to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise.

*Id.* at 490. Clay County contends that here, the "proper response" for Threat, even without supervision, would have been not to rape Bailey. Additional jailers would have been hired to watch inmates, not to prevent the criminal acts of fellow jailers. *See also Brown*, 520 U.S. at 404 ("A municipality may not be held liable under § 1983 solely because it employs a tortfeasor . . . ."). In essence, Clay County argues, Bailey's position is that "but for" the lack of funding, she would not have been raped. However, as noted in *Brown*,

> Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a "but-for" sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

520 U.S. at 410.

Finally, Clay County argues, an amendment at this stage would cause it prejudice. Clay County notes that discovery is virtually complete, and that if the motion is granted, it and Toland may be forced to retain separate counsel and substantially refashion their discovery and defense.

### III. Plaintiff's Reply

First, Bailey argues, the motion is timely. She notes that the deposition of Toland, which is the basis of her motion, was taken during the normal course of discovery in this case. The subject motion was timely filed after the taking of said deposition. Moreover, Bailey asserts, Rule 59(e), cited by Clay County, applies only to final judgments. She makes the same argument with respect to Rule 60(b). As to Rule 54(b), Bailey notes that a district judge has the discretion to revise interlocutory orders prior to the entry of a final judgment. *See Partmar Corp. v. Paramount Corp.*, 347 U.S. 89, 100 (1953). Bailey also notes that under Rule 15(a), "leave [to file an amended complaint] should be freely given when justice so requires." As the

6

court noted in *Forman v. Davis*, 371 U.S. 178 (1962),

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."

*Id.* at 182.

Bailey also address this court's scheduling order, which set October 7, 2002 as the deadline for filing amended pleadings. While noting that a scheduling order should be modified only for good cause shown, *see* Fed. R. Civ. P. 16(b), Bailey contends that she has provided good cause by virtue of the new information obtained from Toland's deposition. She notes that considerable difficulty was encountered in serving Threat, which resulted in the his answer not being filed until on or around September 3, 2003. Clay County did not file its amended answer until October 4, 2002. Due to scheduling difficulties, the discovery deadlines were extended on several occasions, and on January 13, 2002, the parties filed a joint motion to modify the scheduling order. Bailey notes that Toland's deposition was not taken until January 30, 2003, at which time he did not waive his signature. *See* Toland Depo. at 3. The court reporter's certificate indicates that the transcript was not completed until February 28, 2003. *Id.* at 165. The motion at issue here was filed March 10, 2003. Thus, Bailey argues, she filed this motion as soon as was practical under the circumstances. *See* Pl. Supp. Reply Br. at 4-5.

Finally, Bailey argues, the proposed amendment is not futile. As noted above, Bailey contends that, under the facts as stated by Toland, Clay County created a "strong likelihood" that female inmates would be raped. Clay County then knowingly and deliberately disregarded that

7

risk by failing to provide proper funds to hire additional jailers. *See Tittle*, 10 F.3d 1535. *See also Brown*, 517 U.S. 1154.

## CONCLUSIONS OF THE COURT

The plaintiff has responded to the court's order of April 16, 2003. The court concludes that the response is not sufficient to establish that Clay County may be held liable based upon conclusory allegations of the former sheriff that there were not sufficient funds to hire another jailer to protect an inmate from being raped by the jailer on duty. There is no allegation or evidence sufficient to suggest a policy or custom. Further, there is no allegation as to why the sheriff could not have used some funds available to him to hire another jailer if that were a perceived problem. There is no allegation that the sheriff did not have sufficient funds for such purpose if allocated differently than as done. There may be instances in which a county may be held liable for jail operations. This is not one of them. The motion will be denied.

This __8th__ day of May, 2003.

                                                                   **ROBERT B. PROPST**
                         **SENIOR UNITED STATES DISTRICT JUDGE**